UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CINDY FOOTE,

        Plaintiff,

                                                                 Case No. 1:04-cv-380

v.

                                                                  Hon. Wendell A. Miles

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION**

        Plaintiff Cindy Foote filed this action for judicial review of the final decision of the Commissioner of Social Security that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 416(i), 423. United States Magistrate Judge Ellen S. Carmody submitted a Report and Recommendation, (Dkt # 11), recommending that the Commissioner of Social Security's decision be affirmed. Plaintiff filed objections to the Magistrate Judge's Report and Recommendation, (Dkt. # 12), and the Defendant responded to the objections. For the reasons that follow, the Court overrules Plaintiff's objections, and adopts the Report and Recommendation of the Magistrate Judge in its entirety.

Standard of Review

        When objections have been made to a magistrate judge's report and recommendation, the district court's standard of review of the report and recommendation is *de novo*. FED. R. CIV. P. 72(b); 28 U.S.C. § 636(b)(1). Judicial review of a final decision regarding disability benefits is

limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. Warner v. Comm'r of Soc. Sec., 375 F. 3d 387, 390 (6th Cir., 2004). There is substantial evidence when a "'reasonable mind might accept'" the relevant evidence "'as adequate to support a conclusion.'" Id. quoting Kirk v. Sec. of Health & Human Servs., 667 F. 2d 524, 535 (6th Cir. 1981). If there is substantial evidence supporting the Commissioner's decision, the court must defer to the decision "'even if there is substantial evidence in the record that would have supported an opposite conclusion . . . .'" Id., quoting Wright v. Massanaari, 321 F. 3d 611, 614 (6th Cir. 2003). The court may not make credibility determinations or resolve conflicts in the evidence. Walters v. Comm'r of Soc. Sec., 127 F. 3d 525, 528 (6th Cir. 1997).

## Background

Plaintiff filed an application for DIB benefits claiming she became disabled on July 16, 2001 (Tr. 43-46), due to degenerative joint disease and fibromyalgia (Tr. 43-46, 49). Her application was initially denied. She requested a hearing before an Administrative Law Judge (ALJ), and on March 22, 2004, the ALJ found that Plaintiff was not disabled. (Tr. 12-21). The ALJ's decision became final when the Appeals Council declined to review the decision.

In May 2001, Plaintiff underwent arthroscopic surgery on her right knee to repair a torn medial meniscus (Tr. 233), and in July, she underwent arthroscopic surgery on her left knee also to repair a torn medial meniscus (Tr. 479). In July 2001, x-rays of her right knee showed mild degenerative changes but no fracture or dislocation (Tr. 84, 417). In August 2001, Plaintiff had full range of motion in her left knee, and reported that most of the pain in her left knee was gone. (Tr. 257). In September 2001, the surgeon found minimal swelling but no loss of range of motion of the left knee (Tr. 257), and observed that Plaintiff could engage in activities as

tolerated. (Tr. 257).

Dr. Zook reported in July 2001, that Plaintiff complained of shoulder, hip, knee and back pain. Plaintiff had some difficulty with range of motion testing and exhibited tender point pain. (Tr. 127). The doctor diagnosed fibromyalgia, and recommended that Plaintiff exercise, lose weight, and obtain a sedentary job. (Tr. 126). In October 2001, Dr. Zook found nearly normal range of neck motion, normal neurological findings, including normal reflexes, sensory responses, and motor functioning, and a normal gait. (Tr. 121). Dr. Zook also found that Plaintiff had multiple trigger points of pain and had difficulty moving quickly from the examination table to a seated position (Tr. 121). The doctor stated that Plaintiff was alert and oriented, her memory was intact, and her mood and affect were appropriate and stable. (Tr. 121).

Plaintiff was examined by Dr. Girish Juneja in November 2001. The doctor found generalized tenderness at 16 of 18 fibromyalgia tender points, normal range of motion in the left knee, no indication of a neurological condition, and unremarkable extremities. (Tr. 113 - 114). Dr. Juneja examined Plaintiff again on December 17, 2001. The doctor found tenderness at 14 of 18 fibromyalgia tender points, functional range of motion in the extremities, 5/5 strength throughout, and no indication of a neurological condition. (Tr. 111). A January 17, 2002 examination by Dr. Juneja revealed localized tenderness at 12 of the 18 tender points. (Tr. 200-201).

In August 2002, Dr. Zook noted that Plaintiff moved without difficulty, walked with a coordinated gait, and had nearly normal ranges of motion. Her memory, mood and orientation were also normal. (Tr. 342-343). Plaintiff complained of dizziness. An electrocardiogram and serology evaluations were negative for cardiac abnormalities.

In April 2002, Plaintiff was examined by a psychotherapist who reported that Plaintiff appeared to be somewhat depressed and had a labile affect, although her general appearance was adequate, her motor activity was calm, and her thought processes were appropriate (Tr. 276-279).

In April, June and July, 2002, Dr. Juneja found that Plaintiff's muscle tone and neurological functioning were normal (Tr. 318, 320, 322), and in September 2002, he found that her gait, ranges of motion, strength and sensation were normal (Tr. 312). Dr. Juneja's reports from October and November 2002, and March 2003, indicated normal neurological findings, back mobility, ability to get up and out of a chair, and ability to walk without difficulty. (Tr. 301, 307-310).

In October 2002, Dr. Zook reported that Plaintiff's musculoskeletal and osteopathic conditions were within normal limits, and that she appeared to be healthy, alert, oriented, pleasant, and in no acute distress. (Tr. 341). He also reported that Plaintiff's "bipolar affective disorder" was controlled with medication. Plaintiff mental status was stable, her mood and affect were stable and pleasant, and she was completely orientated. (Tr. 341).

In January 2002, Dr. Zook stated that Plaintiff was only capable of sedentary work due to progressive periarticular pain (Tr. 249, 461). In April 2002, Plaintiff underwent a residual functional capacity assessment by Ken Taylor, D.O., which indicated Plaintiff could occasionally climb stairs, lift 10-20 pounds, stand two of eight hours, and sit six of eight hours (Tr. 263-264). A mental residual functional capacity assessment by Ronald C. Marsh, Ph. D., indicated "moderate" limitations on prolonged concentration and processing detained instructions (Tr. 270). In May 2003, Dr. Zook reported that Plaintiff could lift no more than ten pounds because of knee and back problems (Tr. 504). Dr. Zook reported on December 5, 2003, that Plaintiff

could lift 20 pounds occasionally, lift and carry 10 pounds frequently, sit for three hours at a time, stand for one hour at a time, and walk half an hour at a time. (Tr. 568). He also reported that Plaintiff should not twist or kneel, and only occasionally bend, (Tr. 569), but had no limitations on her ability to perform simple grasping or fine finger movements. (Tr. 569). Dr. Zook rated as "poor/none" Plaintiff's ability to deal with work stresses and maintain attention and concentration (Tr. 571), or to behave in an emotionally stable manner or demonstrate reliability (Tr. 572). He rated as "good" her ability to related to co-workers, follow rules, and deal with the public.

According to a January 2002 questionnaire Plaintiff submitted, Plaintiff was generally able to care for herself, occasionally prepare meals, perform light housework twice a week, and shop once a week. (Tr. 79-80). She read and watched television (Tr. 81). Plaintiff testified that she experienced extreme, disabling pain that forced her to sit in a recliner with her legs elevated almost eight hours a day , and swelling, stiffness, disrupted sleep, and depressed mood (Tr. 582 - 583, 599). She could not lift over five pounds (Tr. 590), had limited concentration (Tr. 583-584), and needed to sleep during the day (593-594, 599). The pain in her feet was often so severe she was unable to walk. (595).

At the time of the ALJ's decision, Plaintiff was 48 years old, with work experience as an emergency medical technician, resort housekeeper, and a nurse's aide at a nursing home (Tr. 579). The ALJ concluded that Plaintiff could not perform her past work, but was capable of sedentary work with a sit/stand option. (Tr. 19). Further, that she would not be able to consistently carry out complex or detailed instructions, which limited her to unskilled work. (Tr. 19). Based upon this residual functional capacity and Plaintiff's age, education and work

experience, the VE identified 8,900 positions in the lower peninsula of Michigan that Plaintiff could perform.

## Discussion

Plaintiff argues that (a) the Administrative Law Judge ("ALJ") lacked sufficient grounds to reject Plaintiff's testimony (b) violated the "treating physician" rule, and (c) presented an erroneous hypothetical to the Vocational Expert ("VE").

<u>Plaintiff's credibility</u>

The ALJ found that Plaintiff's impairments consisted of fibromyalgia, status post knee arthroscopies, back pain, mild obesity, and possible rheumatoid arthritis.  However, the ALJ found that Plaintiff's testimony, "with respect to the extent and severity of her impairment and the resulting limitations, to be somewhat overstated and inconsistent with available evidence." (Tr. 18). Plaintiff argues that the ALJ lacked sufficient grounds to reject Plaintiff's testimony regarding her pain and other limitations caused by her medical conditions.  "Subjective complaints of 'pain or other symptoms shall not alone be conclusive evidence of disability.'" <u>Buxton v. Halter</u>, 246 F. 3d 762, 773 (6th Cir. 2001), quoting 42 U.S.C. § 423(d)(5)(A).  The ALJ's "findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an [ALJ] is charged with the duty of observing a witness's demeanor and credibility."  <u>Walters v. Comm'r of Soc. Sec.</u>, 127 F. 3d at 531.   The applicant's credibility may be discounted "to a certain degree . . . where an [ALJ] finds contradictions among medical reports, claimant's testimony and other evidence."  <u>Id.</u>

The ALJ found that Plaintiff had impairments that could cause pain, but concluded that the record did not "fully support" Plaintiff's account of the frequency, duration and intensity of

6

her symptoms, her expressed level of fatigue, or need to sit or recline eight hours per day with her legs elevated. Plaintiff correctly argues that a claimant's complaints of pain or fatigue need not be precisely corroborated by objective findings, pointing out there are no tests that measure the degree of pain or fatigue a person is experiencing.

Although complaints of pain and fatigue need not be confirmed by objective findings, they must be consistent with the medical findings. See, e.g. Stanley v. Sec. of Health and Human Sers., 39 F. 3d 115 (6th Cir. 1994). Where the ALJ finds objective medical evidence of an underlying medical condition, the ALJ must determine (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition, or (2) whether the condition is of such severity that it could reasonably be expected to produce the alleged disabling pain. Id. at 117. Here, the ALJ considered the medical tests showing no cardiac abnormalities, and the medical reports of generally normal gait, strength, range of motion, and neurological findings. The ALJ also considered that the testimony and written record revealed that Plaintiff was able to able to care for herself, prepare meals, perform light housework, drive short distances, shop, use a computer, read, attend church, visit with others, watch television and occasionally go out to eat. Considering the record as a whole, there was substantial evidence supporting the ALJ's conclusion that Plaintiff's assertions of severe and debilitating pain and fatigue were not fully credible.

The "treating physician rule"

Plaintiff contends that the ALJ's did not give proper weight to the opinion of Dr. Zook, her treating physician. An ALJ must give the opinion of a treating physician controlling weight if the opinion is "well supported by medically acceptable clinical and laboratory diagnostic

techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); Wilson v. Comm'r of Soc. Sec., 378 F. 3d 541, 544 (6th Cir. 2004). If the treating physician's opinion is not supported by objective medical evidence, the ALJ is entitled to discredit the opinion as long as he sets forth a reasoned basis for doing so. Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir.1987). In this case, substantial evidence, which was set forth in detail in the ALJ's written decision, supported the ALJ's decision not to accord controlling weight to the opinion of Dr. Zook.

Dr. Zook's assessment of Plaintiff's physical limitations was consistent with the ability to do sedentary work with a sit/stand option.  However, the ALJ noted that Dr. Zook's assessment of Plaintiff's non-exertional limitations was not consistent with the doctor's earlier reports, which stated at various times that Plaintiff was alert, orientated, had appropriate and stable mood and affect, intact memories, and normal thought processes.   There were no reports from Dr. Zook, or any other doctor, that contained medical evidence supporting Dr. Zook's opinion that Plaintiff was unable to deal with work stress, maintain attention and concentration, behave in an emotionally stable manner or demonstrate reliability.  Accordingly, the ALJ properly accorded little weight to Dr. Zook's assessment of Plaintiff's mental or emotional status.

Vocational Expert testimony

The ALJ concluded that Plaintiff could not perform her past work, but had the residual functional capacity for sedentary work.  He asked the vocational expert ("VE") to assume a person of the same age, education and vocational experience as Plaintiff, with the residual functional capacity for unskilled sedentary work with a sit/stand option; and further, restricted from repetitive bending, stooping, twisting, turning, climbing, and only occasional gripping,

grasping, pushing, and pulling.  The VE identified 8,900 jobs in the lower peninsula of Michigan that would meet these requirements.  Plaintiff contends that the ALJ's hypothetical did not accurately reflect Plaintiff's exertional and nonexertional limitations.

An ALJ may rely upon vocational expert's testimony in response to a hypothetical question.  Longworth v. Comm'r of Soc. Sec., 402 F. 3d 591, 596 (6th Cir. 2005), citing 20 C.F.R. § 416.960(b)-(c).  The ALJ is required to include in the hypothetical question only those limitations that accurately portray a claimant's physical and mental impairments.  Varley v. Sec. of Health & Human Servs., 820 F. 2d 777, 779 (6th Cir. 1987).  The ALJ, however, is not required to incorporate unsubstantiated complaints in a hypothetical.  Hardaway v Sec. of Health & Human Servs., 823 F. 2d 922, 927-28 (6th Cir. 1987).  As previously discussed, there was substantial evidence supporting the ALJ's determination that Plaintiff's subjective complaints of severe and debilitating pain and fatigue were overstated and inconsistent with the medical evidence.  The ALJ's conclusion that Plaintiff could perform unskilled sedentary work with a sit/stand option was consistent with the medical findings as well as Dr. Zook's report that she could occasionally lift 20 pounds, frequently lift 10 pounds, sit for three hours, stand for one hour, and walk half an hour at a time.[1]  Thus, the hypothetical posed by the ALJ accurately reflected those restrictions and limitations that were supported by substantial evidence.

---

[1] Sedentary work is described in 20 C.F.R. § 416.967(A) as work which "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sedentary work is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."

## Conclusion

Having reviewed the record and the Magistrate Judge's Report and Recommendation, the court finds that the Magistrate Judge reached the correct conclusion in the Report and Recommendation. Accordingly, the court OVERRULES the Plaintiff's objections, and ACCEPTS AND ADOPTS the Magistrate Judge's Report and Recommendation.

So ordered this 29th of July, 2005.

    /s/ Wendell A. Miles
Wendell A. Miles
Senior U.S. District Judge